UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MATTHEW MESSIAH BOOKER, #434581

                              Plaintiff,

            -against-

SUFFOLK COUNTY CORRECTIONAL FACILITY,
C.O. PAUL FIUME, BADGE # 1202

                              Defendants.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-5204-AMD-SJB

**BULSARA, United States Magistrate Judge:**

On September 3, 2014, Plaintiff Matthew Messiah Booker ("Booker"), proceeding

*pro se* and *in forma pauperis* and while incarcerated, brought this action against the

Suffolk County Correctional Facility ("Suffolk Correctional") and Correction Officer Paul

Fiume, badge number 1202 ("Fiume") (collectively, "Suffolk").  Booker alleges that on

August 21, 2014, his privacy was violated, he was physically injured, and he was

deprived of certain other rights and privileges during and subsequent to a violent

altercation with correction officers, allegedly in violation of 42 U.S.C.§ 1983.  (Compl.

dated September 3, 2014 ("Compl."), Dkt. No. 1 at 2–3).

On November 22, 2014, the Honorable Joseph F. Bianco granted Booker's

motion to stay the case until he was no longer incarcerated, to which Suffolk did not

object.  (Order dated Nov. 20, 2014, Dkt. No. 15 at 1).  In the same order, Judge Bianco

directed Booker to submit a letter to the Court indicating when he anticipated he would

be released.  (*Id*.).  After over three years and several Court-issued reminders with

deadlines for submission, Booker filed a letter indicating that his official release date

was to be January 10, 2019, but he believed that that date was inaccurate and that he

would be released earlier.  (Letter to Judge Azrack from Messiah Booker dated Apr. 23,

2018, Dkt. No. 29 at 1).  After additional orders demanding Booker provide his release date, Booker has failed to provide the Court with such information, over five years after Judge Bianco's Order.  Instead, information provided by Suffolk indicates Booker has not been incarcerated since May 2019.  Efforts to contact Booker, including attempts both before and after May 2019, have been futile, including multiple mailings to various addresses demanding updated contact and release date information.  Booker also failed to appear for a status conference, failed to respond to the Court's order to show cause requiring him to explain his failure to appear, and has been unresponsive to efforts to ascertain other information.

For these reasons and those described below, the Court recommends that Booker's claims be dismissed with prejudice for: (1) failure to abide by court orders, and (2) failure to prosecute.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Booker alleges he was an inmate at Suffolk Correctional.  (Compl. at 4).  On the morning of August 21, 2014, another inmate made a sexually suggestive comment to a female correction officer, leading to a "shake-down." (*Id.*).  During the shake-down, Booker was ordered to strip naked, but he replied that he could not strip down beyond his underwear because he was in full view of several officers and an inmate in another cell, a violation of his privacy.  (*Id.*).  Fiume poked Booker's chest and stated, "Take all your clothes off!"  Booker replied, "Please do not touch me.  There is no reason for that." (*Id.*).  Fiume and other officers then rushed Booker in the cell and started punching and kicking Booker, kneeing his ribs and lower body, and bending his ankles and wrists. (*Id.*).  He was handcuffed and dragged out of the cell in his underwear.  (*Id.* at 4–5).

Booker then alleges he was placed in shackles and ankle irons in an elevator while

on the third floor.  (*Id.* at 5).  Fiume, along with other officers, proceeded to physically assault Booker in the elevator for ten minutes, leading to several injuries and for Booker to fear for his life.  (*Id.*).

Booker seeks monetary compensation for his alleged pain and injuries, (*id.* at 6), which include contusions and a swollen and possibly fractured hand, wrist, and ankles, (*id.* at 4).  He alleges he feels pain every time he breaths and suffers from constant headaches.  (*Id.*).  His numerous requests for medical attention for his pain and injuries were denied.  (*Id.* at 4, 5).  He was also denied religious services, mail delivery, and an opportunity to make phone calls.  (*Id.* at 5).

After filing his Complaint on September 3, 2014, Booker had limited involvement in this case.  Booker filed a motion to amend the caption a couple weeks later, (Mot. to Amend/Correct/Supp. dated September 18, 2014, Dkt. No. 7), which was granted, (Order dated Sept. 23, 2014, Dkt. No. 8).  But, the order granting the motion, mailed to Booker at Suffolk Correctional, was returned undeliverable.  (Mail Returned as Undeliverable dated Oct. 2, 2014, Dkt. No. 10).  The Pro Se Office sent Booker a letter that, *inter alia*, informed Booker of his duty to prosecute his case or risk dismissal under Rule 41(b), as well as attached a change-of-address form for Booker to use should his contact information change.  (Letter from Pro Se Office to Messiah Matthew Booker dated Oct. 3, 2014, Dkt. No. 9 at 1, 2).  By letter dated October 28, 2014, Booker asked to amend his Complaint, but the letter was returned by the Pro Se Office for failure to meet minimum requirements for amending a pleading.  (Letter from Pro Se Office to Messiah M. Booker dated Nov. 6, 2014, Dkt. No. 12 at 1, 2).

On November 10, 2014, Booker filed a document with the Court explaining his difficulties in litigating his case and requesting a stay until he was no longer

incarcerated.  (Mot. to Stay dated Nov. 10, 2014, Dkt. No. 13 at 1).  Suffolk did not

oppose a stay.  (Reply in Supp. of Pl.'s Request for a Stay dated Nov. 13, 2014, Dkt. No.

14 at 1).  Judge Bianco granted the motion, and Booker was ordered to submit a letter to

the Court indicating when he anticipated he will no longer be incarcerated.  (Order

dated Nov. 20, 2014, Dkt. No. 15 at 1).  The order granting the stay was returned

undeliverable.  (Mail Returned Undeliverable dated Dec. 1, 2014, Dkt. No. 16).

Booker sought to file an amended complaint on November 24, 2014, but his

submission was again returned by the Pro Se Office for failure to meet minimum

requirements.  (Letter from Pro Se Office to Messiah Matthew Booker dated Dec. 8,

2014, Dkt. No. 18 at 1, 2).

On January 16, 2015, the case was reassigned to the Honorable Joan M. Azrack.

Soon after reassignment, Judge Azrack issued the following Status Report Order:

> Pro se plaintiff requested a stay of this case until he was release from
> incarceration.  Judge Bianco granted that request and stayed this case on
> November 20, 2014.  By 2/19/2016, Pro se plaintiff is ordered to submit a
> letter to the Court indicating when he anticipates he will be released.

(Status Report Order dated January 19, 2016).  Mailed to Booker at Suffolk Correctional,

this Order was returned as undeliverable.  (Mail Returned as Undeliverable dated Feb.

3, 2016).  Judge Azrack ordered defense counsel to file a status report, including

information they may possess about Booker's current address.  (Status Report Order

dated Mar. 3, 2016).  Counsel indicated that Booker was currently incarcerated at

Washington Correctional Facility in Comstock, New York per the New York State

Department of Corrections website (the "Corrections website").  (Letter Pursuant to

3/3/2016 Status Report Order dated Mar. 18, 2016, Dkt. No. 23 at 1).

Judge Azrack issued another order directing Booker to file a letter indicating his

anticipated release date and "cautioned" Booker "that even though a stay is in place, he is responsible for notifying the Court when his address changes." (Status Report Order dated Mar. 29, 2016). On June 27, 2016, the Court received a letter from Booker with the Washington Correctional Facility address and requested he be excused for his "lateness" and be appointed an attorney. (Notice of Change of Address & Resp. dated June 21, 2016, Dkt. No. 24 at 1).

After no docket activity for over a year, on September 26, 2017, Judge Azrack issued an order requesting a joint status report from the parties to be filed within a month. (Status Report Order dated Sept. 26, 2017). On October 27, 2017, counsel for Suffolk indicated they had not heard from Booker since June 2016 when he updated his address, but since then, they had learned from the Corrections website that he was now incarcerated at Fishkill Correctional Facility in Beacon, New York ("Fishkill"). (Status Report dated Oct. 27, 2017, Dkt. No. 25 at 1). The Court received a letter from Booker on November 8, 2017, in which he indicated he "would like to pursue this civil matter," but had no counsel to assist him. (Letter to Judge Azrack from Messiah Matthew Booker dated Nov. 2, 2017, Dkt. No. 26). The letter indicated he was incarcerated at Fishkill, (*id.*), and a change of address form was filed on November 27, 2017, (Notice of Change of Address dated Nov. 27, 2017, Dkt. No. 28).

On March 30, 2018, Judge Azrack issued an order indicating for the third time that Booker must provide the Court with information about his anticipated release date, giving him until April 30, 2018, to do so. (Status Report Order dated Mar. 30, 2018). Booker responded on April 26, 2018—the last time the Court heard from Booker—by stating his present release date was January 10, 2019, but he believed that this date was inaccurate—his calculations led him to believe his release date was April 27, 2018.

(Letter to Judge Azrack from Messiah Matthew Booker dated Apr. 23, 2018, Dkt. No. 29 at 1). When released, he would contact the court, he stated, which would be before January 10, 2019. (*Id.*).

After no docket activity for over 9 months, on January 31, 2019, Judge Azrack issued an order directing Booker, once again, to update the Court on his estimated release date by February 22, 2019. (Order dated Jan. 31, 2019). The Order was mailed to Booker at Fishkill; it was not returned undeliverable.

This case was reassigned to the Honorable Ann M. Donnelly and the undersigned on March 25, 2019. This Court issued another order requesting updated release date information from Booker, due by April 25, 2019. (Order dated March 26, 2019). A copy of this Order, mailed to Booker at Fishkill, was not returned as undeliverable.[1]

Four months later, without a response, the Court scheduled a status conference for October 18, 2019. (Scheduling Order dated July 24, 2019, Dkt. No. 31). In this Scheduling Order, the Court directed the Superintendent of Fishkill and Booker to arrange for Booker's appearance at the status conference by telephone. (*Id.* at 1). The Court mailed a copy of the docket sheet reflecting the Scheduling Order, but it was returned as undeliverable. The Court ordered Suffolk to serve Booker with the Scheduling Order at Fishkill. (*Id.*). In response, Suffolk filed a letter indicating that their review of the Corrections website revealed that Booker had been released from custody as of May 1, 2019, and his last known address was in Farmingdale, New York. (Letter from Susan A. Flynn to Judge Bulsara dated July 25, 2019, Dkt. No. 32 at 1).

---

[1] This Court's practice is to periodically mail the entire docket sheet, which reflects all orders issued in the case to-date, to *pro se* parties. This Court followed this practice in this case, as reflected herein.

Suffolk served Booker with the Court's Scheduling Order setting the status conference, as well as their letter regarding his release, at his Farmingdale address, and filed proof of service on the docket. (Certificate of Serv. dated July 29, 2019, Dkt. No. 33).

The status conference was rescheduled to two days earlier—October 16, 2019—and the Court directed Booker to notify the Court of any change of address. (Re-Scheduling Order dated Sept. 10, 2019, Dkt. No. 34). As directed, Suffolk served Booker with a copy of the Court's Re-Scheduling Order at his Farmingdale address and filed proof of service on the docket, (Certificate of Serv. dated Sept. 11, 2019), but it appears the mail was returned as undeliverable, (Mot. to Adjourn dated Oct. 11, 2019, Dkt. No. 37 at 1). The Court's attempts to mail the Order to the Farmingdale address also resulted in the mailing being returned as undeliverable. (Mail Returned as Undeliverable dated Sept. 25, 2019).

In October, Suffolk sought to adjourn the status conference in light of Booker's failure to advise the Court of his present address and the Re-Scheduling Order being returned as undeliverable. (Mot. to Adjourn dated Oct. 11, 2019, Dkt. No. 37 at 1). The Court denied the motion to adjourn, giving Booker a chance to appear at the status conference. (Order dated Oct. 15, 2019).

Booker failed to appear for the status conference on October 16, 2019. (Order dated Oct. 17, 2019). The Court ordered Booker to explain why he failed to do so by November 18, 2019, highlighting the fact that it believed Booker was no longer incarcerated. (*Id.*). The Court warned that should Booker fail to explain his failure to appear, "he may be subject to sanctions, including dismissal of his case for failure to obey a court order or failure to prosecute pursuant to Rules 37 and 41." (*Id.*). The Court also issued an order directing Booker to provide updated contact information, warning

that "he may be subject to sanctions, including dismissal of his case for failure to obey a court order or failure to prosecute pursuant to Rules 37 and 41" if he failed to do so. (Order dated Oct. 17, 2019). Seeing that use of the Farmingdale address had proven futile, the Court attempted to mail these Orders to Booker at the private address listed in his Complaint in Middle Island, New York, but this mail was also returned as undeliverable. (Mail Returned as Undeliverable dated Nov. 12, 2019).

## DISCUSSION

I.    Dismissal with Prejudice under Rules 16(f) and 37(b)

"A court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant . . . for disobeying the court's orders [.]" *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002). "The imposition of sanctions pursuant to Rule 37 (and . . . Rule 16(f)) is a matter committed to the sound discretion of the District Court." *Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y. 1997). The purpose of such sanctions, including dismissal, is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49–50 (2d Cir. 1994) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). The Court recommends that Booker's claims be dismissed with prejudice, because he failed to comply with multiple court orders and failed to appear at a pretrial conference.

A court may sanction a party for failing to appear—either at a court conference or as the Court directs. Rule 16(f)(1)(A) of the Federal Rules of Civil Procedure provides that a "court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party . . . fails to appear at a scheduling or other pretrial

conference." Fed. R. Civ. P. 16(f)(1)(A). A court also has the ability to sanction a party for failing to abide by any of its orders. Fed. R. Civ. P. 16(f)(1)(C) (permitting sanctions where party "fails to obey a scheduling or other pretrial order."); *Martin v. Giordano*, 185 F. Supp. 3d 339, 354 (E.D.N.Y. 2016) ("When a party or its attorney engages in conduct proscribed by Rule 16(f), the court may issue any just orders." (quotations omitted)); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 35 (S.D.N.Y. 2014) ("Rule 37(b)(2)(A)(ii)–(vii), which Rule 16(f) references, sets forth a non-exclusive list of sanctions a court may impose against a party for failing to comply with a court order," including dismissal.). "The court need not find that a party or litigant acted in bad faith as a prerequisite to imposing sanctions under Rule 16(f); [r]ather, the fact that a party violated a pretrial order is sufficient to allow a Rule 16 sanction." *Giordano*, 185 F. Supp. 3d at 354 (quotations omitted).

Here, Booker failed to comply with several court orders and failed to appear at a status conference. First, he failed to provide the Court with updated information about his release from incarceration in response to the Court's orders dated January 31, 2019, and March 26, 2019. (*See* Order dated Jan. 31, 2019; Order dated March 26, 2019). Booker had previously provided the Court with information about his release date after several court orders requiring him to do so—he stated that he would contact the Court when released before January 10, 2019. (Letter to Judge Azrack from Messiah Matthew Booker dated Apr. 23, 2018, Dkt. No. 29 at 1). Booker never did so.

Next, Booker failed to appear at a pretrial conference. After Booker ceased communicating with the Court in April 2018, and the Court's orders failed to prompt a response from Booker, the Court scheduled a status conference for October 2019. (Scheduling Order dated July 24, 2019, Dkt. No. 31). The Court arranged for Booker to

appear by telephone at Fishkill, (*id.*), but learned from Suffolk that Booker appeared to have been released in May 2019, (Letter from Susan A. Flynn to Judge Bulsara dated July 25, 2019, Dkt. No. 32 at 1). Booker did not appear, in person or by telephone, at the status conference on October 16, 2019. (*See* Order dated Oct. 17, 2019).

Finally, Booker failed to comply with the Court's two orders following the status conference. (*See* Orders dated Oct. 17, 2019). The Court ordered Booker to explain why he failed to appear—he did not do so. (*Id.*). The Court also ordered Booker to provide updated contact information—he did not do so. (*Id.*).

These repeated failures warrant sanctions under both Rule 16(f)(1)(A) (failure to appear at a scheduling or other pretrial conference) and 16(f)(1)(C) (failure to obey a scheduling or other pretrial order). *See, e.g.*, *Johnson v. New York City*, No. 14-CV-4278, 2015 WL 12999661, at *1 (E.D.N.Y. Jan. 12, 2015) (recommending dismissal under Rules 16(f) and 37(b)(2)(A)(v) for lateness and failure to appear at two court-ordered conferences), *report and recommendation adopted*, 2015 WL 12990999 (Feb. 2, 2015), *aff'd*, 646 F. App'x 106 (2d Cir. 2016).

The sanctions for such misconduct—whether it be a failure to appear or abide by a court order—include dismissal. *See* Fed. R. Civ. P. 16(f) (adopting the sanctions authorized by Rule 37(b)(2)(A)(v)); *see* Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery."); *Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997) (collecting cases) ("[T]he standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37."). Such a dismissal may be with prejudice. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[A]ll litigants . . . have an obligation to comply with court

orders, and failure to comply may result in sanctions, including *dismissal with prejudice*.") (citations and quotations omitted) (emphasis added).[2]  "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant."  *Id.* (quotations omitted).

The Court considers several factors in determining whether to impose a sanction of dismissal with prejudice: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Id.* (quotations omitted); *accord S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).  "[T]hese factors are not exclusive, and they need not each be resolved against" the non-compliant party for dismissal to be appropriate.  *S. New England Tel. Co.*, 624 F.3d at 144.  Ultimately, the Court must conclude under all of the circumstances whether dismissal would be "just."  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007).  "[T]he district court 'is free to consider the full record in the case'" in making this determination.  *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 308 F.R.D. 113, 120 (S.D.N.Y. 2015) (quoting *S. New England Tel. Co.*, 624 F.3d at 144).  The

---

[2] *Pro se* litigants are afforded leeway when it comes to litigation noncompliance; however, "[t]he sanction of dismissal 'may be imposed even against a plaintiff who is proceeding *pro se*, so long as warning has been given that noncompliance can result in dismissal.'"  *Johnson*, 2015 WL 12999661, at *1 (quoting *Valentine*, 29 F.3d at 49); *see Agiwal*, 555 F.3d at 302 ("*Pro se* litigants, though generally entitled to special solicitude before district courts, are not immune to dismissal as a sanction for noncompliance with discovery orders.") (citations and quotations omitted).  Despite his status as a *pro se* and formerly incarcerated litigant, Booker's claims should still be dismissed because he has not given this Court any indication that he intends to cure his failures to obey court orders.

balance of factors here justifies the dismissal with prejudice of Booker's claims.

A. <u>Willfulness</u>

Noncompliance is willful where the party has received notice of a court's orders and repeatedly failed to comply. *See Coach Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011) ("The Court deems the noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply."), *report and recommendation adopted and modified on other grounds*, 2012 WL 1255276 (Apr. 13, 2012). "[T]his factor as formulated by the Second Circuit is not just willfulness, but the willfulness of the non-compliant party *or the reason for non-compliance. . . .* [T]he Second Circuit's inclusion of the latter phrase recognizes that dismissal may be warranted even in the absence of such open defiance." *Jin Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642, 2019 WL 360099, at *5 (E.D.N.Y. Jan. 11, 2019) (quotations omitted), *report and recommendation adopted*, 2019 WL 356939 (Jan. 29, 2019).

Booker failed to comply with four court orders and failed to appear at a conference. (Order dated Jan. 31, 2019; Order dated March 26, 2019; Orders dated Oct. 17, 2019). Most of these failures stem from Booker's failure to update the Court about his release. Booker was aware that the stay that Judge Bianco entered was because he was incarcerated. (Order dated Nov. 20, 2014, Dkt. No. 15 at 1). He indicated he understood his obligation to inform the Court about his release date, providing some information about his release and stating he would contact the Court when he was released, which he believed would be before January 10, 2019. (*See* Letter to Judge Azrack from Messiah Matthew Booker dated Apr. 23, 2018, Dkt. No. 29 at 1). While copies of the orders were returned as undeliverable, the Orders dated January 31, 2019,

and April 25, 2019, which directed Booker to update the Court on his release date, were not. (*See* Order dated Jan. 31, 2019; Order dated Apr. 25, 2019; Certificate of Serv. dated July 29, 2019, Dkt. No. 33). Similarly, with respect to the status conference, the Court's original Scheduling Order was mailed and not returned. In light of this notice and Booker's understanding that he should keep the Court apprised of his incarceration status, Booker was aware of the obligations to abide by the Court's orders, and his failure to comply is willful. *See, e.g.*, *Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3193, 2018 WL 3104456, at *8 (E.D.N.Y. May 16, 2018) ("Having received these multiple notices, Rosemarie Lopa had other options besides appearing or responding as directed. She could have written to the Court seeking an adjournment or extension of time to respond; or retained counsel, as she had previously done, to appear or respond on her behalf. Having done none of these things and having failed to appear or respond personally, the only conclusion to be drawn is that her disregard of the Court's orders was willful."), *report and recommendation adopted*, 2018 WL 3019875 (June 18, 2018) and 2018 WL 3094940 (June 22, 2018); *Coach Inc.*, 2011 WL 6122265, at *3 ("The Court deems noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply.").

    B.    <u>Efficacy of Lesser Sanctions</u>

A sanction less than dismissal would not be effective in this case. When it is apparent a plaintiff has abandoned the action, "[t]he Court need not afford [him] unlimited opportunities to appear," and "[n]o lesser sanction than dismissal is appropriate under these circumstances." *Bey v. Gursky*, No. 17-CV-6447, 2018 WL 1611665, at *2 (E.D.N.Y. Mar. 15, 2018), *report and recommendation adopted*, 2018 WL 1611377 (Apr. 3, 2018).

The record suggests no reason to believe that a lesser sanction, such as a monetary fine or a sanction short of dismissal, would encourage Booker to reengage in this litigation, especially given his repeated failure to abide by prior court orders and the warnings that his case could be dismissed should he fail to comply. His failure to communicate with the Court and to provide it with updated contact information make any additional efforts by the Court to communicate with him futile. At this point, given the multiple opportunities afforded to Booker to participate in the case, the Court has no reason to believe any sanction other than dismissal is appropriate. *See, e.g.*, *Dungan v. Donahue*, No. 12-CV-5139, 2014 WL 2941240, at *4 (E.D.N.Y. June 30, 2014) (adopting report and recommendation) (dismissing case for failure to abide by court orders and noting "in light of plaintiff's ongoing unresponsiveness to the Court, no sanctions other than dismissal would be effective. The record presents no reason to believe that a monetary fine or other sanction short of dismissal would inspire in plaintiff the dedication to this litigation that he currently lacks. . . . This case therefore presents an example of extreme circumstances warranting the harsh remedy of dismissal [.]"); *Gordon v. Peralta*, No. 10-CV-5148, 2012 WL 2530578, at *2 (E.D.N.Y. June 11, 2012) (dismissing case for failure to abide by court orders and noting "the Court has tried the lesser sanction of . . . warning [plaintiff] of possible dismissal to no avail. Requiring defendant's counsel to appear again or imposing lesser sanctions on plaintiff would be futile at this juncture.") (citations and quotations omitted), *report and recommendation adopted*, 2012 WL 2530106 (June 29, 2012).

C.     Duration

The duration of Booker's noncompliance warrants dismissal. "[D]urations of time as brief as a few months have been held to weigh in favor of dispositive sanctions."

*Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr.*, 88 F. Supp. 3d 250, 265 (S.D.N.Y. 2015) (collecting cases) (adopting report and recommendation).  "[P]eriods of six months or more weigh even more heavily toward such remedies."  *Id.* at 266 (collecting cases).

Booker has failed to comply with court orders since February 22, 2019, beginning with his failure to respond to the Court's January 31 Order directing him to provide information regarding his estimated release date.[3]  (Order dated Jan. 31, 2019).  Booker has been released from incarceration since May 2019, (Letter from Susan A. Flynn to Judge Bulsara dated July 25, 2019, Dkt. No. 32 at 1)—more than nine months have passed since the stay would presumably have been lifted in light of Booker's release—but the Court has not heard from Booker, either to cure his failures while incarcerated or explain his failures since his release date.[4]  This extended period of non-compliance is sufficient to warrant dismissal.  *See, e.g.*, *Agiwal*, 555 F.3d at 303 (affirming dismissal sanction where disregard of magistrate judge's orders spanned approximately six months); *Rodriguez v. Oak Room*, No. 12-CV-2921, 2012 WL 5305551, at *2 (S.D.N.Y. Oct. 23, 2012) (dismissing after period of non-compliance of "more than five months").

---

[3] Prior to this date, Booker had failed to respond to other Court orders requesting release date information, but his submission on April 23, 2018, provided the Court with information reflecting Booker's understanding of his prospective release date as of that time.  (Letter to Judge Azrack from Messiah Booker dated Apr. 23, 2018, Dkt. No. 29 at 1).

[4] Booker may not indefinitely stay his case through his absence.  And while no order has been entered officially lifting this stay, this fact only further supports dismissal because Booker has not acted to lift the stay or, at minimum, to facilitate the stay's expiration by providing information about his release date.  *Cf. Meeks v. Dir. of Cal. Dep't of Corr.*, 50 F.3d 15, 1995 WL 105344, at *1 (9th Cir. 1995) (unpublished table decision) (affirming dismissal for failure to prosecute where plaintiff "did not attempt to lift the stay or resume prosecution of his action" after being released from parole).

D.   <u>Notice</u>

Booker has received sufficient notice to justify dismissal of his claims.  "[T]he Second Circuit has repeatedly upheld dismissal as an appropriate sanction where the non-compliant parties were warned of the possibility."  *Local Union No. 40*, 88 F. Supp. 3d at 266 (quotations omitted).

Booker was warned twice that failure to comply with court orders could result in dismissal.  (*See* Order dated Oct. 17, 2019 ("Booker is ordered to explain why he failed to appear at the conference on 10/16/2019. . . . Should Mr. Booker fail to do so, he may be subject to sanctions, including dismissal of his case for failure to obey a court order or failure to prosecute pursuant to Rules 37 and 41." (emphasis removed); Order dated Oct. 17, 2019 ("Booker, is directed to provide updated contact information to the Court by 11/18/2019.  Should Mr. Booker fail to do so, he may be subject to sanctions, including dismissal of his case for failure to obey a court order or failure to prosecute pursuant to Rules 37 and 41." (emphasis removed)).

The fact that these two Orders, when mailed to Booker by the Court, were returned as undeliverable does not excuse Booker.  *Pro se* litigants are "obligated to notify the Court of any change of their address," and a plaintiff's "incarceration does not relieve him of his obligation to notify the Court of his whereabouts [.]"  *Aponte v. Hobot*, No. 06-CV-555, 2007 WL 9723264, at *2 (E.D.N.Y. Oct. 10, 2007), *report and recommendation adopted*, 2007 WL 9723265 (Nov. 19, 2007); *Gordon*, 2012 WL 2530578, at *2 ("[I]t is plaintiff's obligation to notify the Court of any change in address.").  Early in his case, Booker was warned by the Pro Se Office of his duty to update the Court with his contact information or risk dismissal for failure to prosecute. (Letter from Pro Se Office to Messiah Matthew Booker dated Oct. 3, 2014, Dkt. No. 9, at

1, 2).  Judge Azrack later "cautioned" Booker "that even though a stay is in place, he is responsible for notifying the Court when his address changes."  (Status Report Order dated Mar. 29, 2016).  Booker acknowledged this Order, and thus, his obligation.  (*See* Notice of Change of Address & Resp. dated June 21, 2016, Dkt. No. 24 at 1).  In addition, six orders were issued over the course of this litigation directing Booker to update the Court about his release date.  (Order dated Nov. 20, 2014; Status Report Order dated January 19, 2016; Status Report Order dated Mar. 29, 2016; Status Report Order dated Mar. 30, 2018; Order dated Jan. 31, 2019; Order dated March 26, 2019).[5]

In light of Booker's obligation to update the Court of his contact information, and the repeated orders over the course of five years requiring him to keep the Court apprised of his whereabouts, the notice provided to Booker is sufficient to permit dismissal.  *See, e.g.*, *Fairchild v. Hankins*, No. CV 18-21, 2019 WL 1474781, at *3 (E.D. Ky. Feb. 15, 2019) ("Although the mailing of the Court's Order was returned on November 28, 2018 as undeliverable and therefore Plaintiff did not receive this warning, such result was the product of Plaintiff's own further failure to update his address information [.]" (citation omitted)), *report and recommendation adopted*, 2019 WL 1473426 (Apr. 3, 2019); *Islam v. Athlete's Needs, Inc.*, No. 18-CV-1562, 2018 WL 5781228, at *1 (E.D.N.Y. Sept. 5, 2018) (finding the warning adequate to justify dismissal when order was sent to plaintiff and never returned as undelivered), *report and recommendation adopted*, 2018 WL 5777020 (Nov. 1, 2018); *Martin v. Metro. Museum of Art*, 158 F.R.D. 289, 292–93 (S.D.N.Y. 1994) (adopting report and

---

[5] The first two of these orders were returned as undeliverable when mailed to Booker, but the Court reasonably assumes Booker became aware of all six of the Orders in light of the fact that subsequent mailings, which were not returned as undeliverable, included the entire docket sheet and thus, the prior two orders.

recommendation) (finding it "clear," after one warning by the court, that "plaintiff received adequate notice that his failure [to comply with a court order] would result in dismissal").

All four factors discussed above, therefore, warrant dismissal with prejudice of Booker's claims, pursuant to Rule 37(b)(2)(A)(v), for his violations of Rules 16(f)(1)(A) and 16(f)(1)(C).

II.    <u>Dismissal with Prejudice for Failure to Prosecute</u>

There is a separate basis to dismiss Booker's claims—his failure to prosecute his case.  Rule 41(b) provides that an action or claim may be dismissed "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order," Fed. R. Civ. P. 41(b).  "Rule 41(b) gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute."  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).  "A dismissal for failure to prosecute is committed to the court's sound discretion," and such a dismissal may be with prejudice.  *Jin Fang Luo*, 2019 WL 360099, at *2; *see, e.g.*, *Kaur v. Royal Arcadia Palace, Inc.*, No. 05-CV-4725, 2007 WL 4276837, at *3 (E.D.N.Y. Nov. 30, 2007) (adopting report and recommendation) (dismissing plaintiff's claims with prejudice under Rule 41(b)).

Courts in this Circuit consider five factors when deciding whether to grant a defendant's motion to dismiss under Rule 41(b) for failure to prosecute:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Jin Fang Luo*, 2019 WL 360099, at *2 (citing *United States ex rel. Drake v. Norden*

*Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)); *see also Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3324, 2018 WL 3019875, at *1 (E.D.N.Y. June 18, 2018) (adopting report and recommendation). These factors overlap with many of the factors under a Rule 37(b) dismissal. "Because of the substantial overlap between the factors commonly used to decide whether to dismiss an action under Rule 41(b) and under Rule 37(b)(2)(A), [there is] no need to repeat [the] discussion of redundant factors in detail." *Dungan*, 2014 WL 2941240, at *6. The Court therefore proceeds to discuss only the third and fourth factors in this analysis. *See Lopa*, 2018 WL 3019875, at *2 (dismissing claims under Rules 16(f) and 37 and addressing the third and fourth factors of the Rule 41 analysis for the sake of completeness).

As to the third factor—prejudice to defendants—courts have found dismissal appropriate "when a party has become completely inaccessible, as inaccessibility strongly suggests that [plaintiff] is not diligently pursuing [his] claim." *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (quotations omitted). "Where a plaintiff has become inaccessible for months at a time, courts presume prejudice." *Id.*; *see, e.g.*, *Dong v. United States*, No. 02-CV-7751, 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004) ("[T]he very fact that Dong has been inaccessible for the last two months— without notifying the Court, the Government, or the Pro Se Office of a change of address—strongly suggests that he is not diligently pursuing this claim. Dong's totally unexplained disappearance is manifestly unreasonable and therefore presumptively prejudices the Government." (citations omitted)).

Booker's repeated failures to comply with court orders since February 2019 and his failure to attend the October 2019 status conference has presumptively prejudiced Suffolk. Suffolk has been under the specter of liability for over five years. Evidence is

likely stale, and Suffolk has had no ability—because of Booker's prolonged absence—of deposing Booker or otherwise challenging his allegations. And while a stay was in place during Booker's incarceration, more than nine months have passed since his release without any action by Booker. At this point, the prejudice from the pending litigation is substantial and justifies dismissal. *See, e.g.*, *Lopa*, 2018 WL 3019875, at *2 ("Defendants' inability to collect information that would enable them to determine the viability of potential defenses and/or arrive at a view as to their potential exposure would certainly prejudice them."); *Schwed v. Gen. Elec. Co.*, 193 F.R.D. 70, 72 (N.D.N.Y. 2000) ("Because plaintiffs' chronic inaction has interfered with defendant's attempt to prepare its case, and because further delay will exacerbate these hardships, the Court concludes that defendant will indeed be prejudiced by further delay.").

As to the fourth factor—balance of interests—the Court must consider a plaintiff's due process interests against its own interest in managing the docket. *Dungan*, 2014 WL 2941240, at *6. "In deciding this factor, the Court must strike a 'balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard.' The efficient administration of justice requires that a court effectively manage its docket, guaranteeing that its cases progress with appropriate speed." *Langdell v. Hofmann*, No. 05-CV-174, 2006 WL 3813599, at *4 (D. Vt. Dec. 27, 2006) (quoting *Drake*, 375 F.3d at 257) (citations omitted). The Court has repeatedly invested its time addressing Booker's estimated release date and has given him several opportunities to pursue his case and keep the Court apprised of his release date and contact information. The course of conduct—or the lack thereof—in prosecuting the case therefore weighs in favor of dismissal. *See, e.g.*, *Dungan*, 2014 WL 2941240, at *6 ("[B]alancing the Court's interest in managing its docket against plaintiff's interest in receiving a fair chance to be heard

militates in favor of dismissal.  It is not the duty of the Court . . . to contact plaintiffs and to urge or require them to prosecute this action.  By abandoning any effort to prosecute his case, plaintiff has demonstrated that he has no interest in being heard.") (citations and quotations omitted); *see also Aponte*, 2007 WL 9723264, at \*2 ("[I]ncarceration does not relieve [plaintiff] of his obligation to notify the Court of his whereabouts, nor does incarceration relieve a *pro se* litigant of the duty to prosecute his case."); *Langdell*, 2006 WL 3813599, at \*5 ("Because Langdell has made no effort over the last year to prosecute his case, it is unfair to the numerous other litigants awaiting the Court's attention to permit this suit to remain on the Court's docket.") (citations omitted).

Therefore, in addition to dismissal under Rules 16(f) and 37(b)(2)(A)(v), the Booker's claims should be dismissed with prejudice for failure to prosecute under Rule 41(b).

CONCLUSION

For the reasons stated above, the Court respectfully recommends that Booker's claims be dismissed with prejudice for failure to abide by court orders and failure to prosecute.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court **within 14 days** of service of this Report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").

Suffolk shall serve a copy of this Report and Recommendation on Booker at his

last known address, and to any other electronic contact information known to it, and file proof of such service in the record **within 14 days** of the date of this Report.

SO ORDERED.

*/s/ Sanket J. Bulsara* Feb. 13, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York